Okay. Our next case this morning is number 12-1558, Cirrus Innovative Accessories versus Balboa Manufacturing. Mr. Murphy. Good morning to the panel, and may it please the court, Matt Murphy for Appellant Cirrus Innovative Accessories. I have four points to present to the court today. The first is the district court's error in its functionality analysis of the trade dress. The second is the court's error in denying the Rule 56D motion. The third is the district court's error in applying the level of skill in the arts to invalidate the 804 patent. And the fourth is the court's error in adding an unsupported limitation in the 690 patent to find non-infringement. You're either overly ambitious, or you're going to talk really fast. I will, Your Honor. My first two points... You're not going to start out with what the court did right, are you? No, Your Honor. I'm not. Okay. Your Honor, this case presents very peculiar facts and a very unusual procedural posture. There were four cases, each assigned to the same judge, but they were not consolidated. Each of them had their own... We're aware of the facts. Why don't you tell us why the product and the particular features that you're seeking to claim as trade dress isn't, in fact, functional? Well, Your Honor, in determining functionality of products, trade dress is considered and analyzed as a whole. The Ninth Circuit said that in 1987. And in the district court's order at 824, the district... It does, Your Honor. And so, the beak shape of the nose, it seems to me, is pretty clearly disclosed in the 240 utility patent, no? Yes, Your Honor, but that's not conclusive evidence of it. It is strong evidence, but not conclusive. And had Cirrus been able to complete its discovery and allow its experts, who are designated in case number three, who are already working at the time summary judgment was heard and granted, we could have put on evidence that would counter that. What would that evidence look like? On functionality, Your Honor, the district court found that she only analyzed three of the six elements of the trade dress. She didn't credit... Take the beak case. Take the 56D motion. I think we're not so much interested in what you now would tell us you would want to come up with, but what you told the district court you would come up with if you'd had adequate time. And looking at the 56D motion, it seems to me that you mostly addressed wanting to come up with evidence of copying. Well, Your Honor... And disproving functionality. Am I mistaken about that? Your Honor, in the record at 8903, line 17 to 19... Which volume of the appendix is this? I believe it's the first one, Your Honor. And what page? 903. 903? No. It's two, Your Honor. I apologize. Okay. So at 903, we informed the court Sears will present evidence both by expert testimony and in the form of consumer surveys concerning the relevant snow sports market, the preference of consumers in that market, and the likelihood of confusion for products employing the Sears trade dress. But this isn't addressing the need for discovery, is it? This is saying what you're going to present. Correct, Your Honor. Where do you say specifically that if you needed discovery to develop evidence on functionality? In the 56D motion, Your Honor, we identified three specific things. Where is that? I'm sorry? Show us the page, would you please? Okay. And we're talking now about the functionality issue. 1295 is where your 56D motion is. Your Honor, the 56D motion did address discovery from the other side and the pending motions to compel. The information sought was more for copying, for secondary meaning. And that's what I thought, right. Yes. So the functionality, though, had the products were submitted as evidence and the district court only analyzed three of the six factors. And when she analyzed them, in fairness to Judge Huff, I have a great deal of respect for her, she looked only at our interrogatory response. She didn't look at the product itself. And that's what the Ninth Circuit said in Clicks Billiards, you can't do. You can't analyze. So it's fair to say you didn't ask for additional discovery on functionality? We asked for additional time, not discovery, Your Honor, because we, Joe Edwards, the president of Cirrus. But this has been going on for over a year, hasn't it, with all these other cases? Well, no, Your Honor, it looks like that superficially from the dockets. But this case was filed in 2009, but the scheduling order and discovery didn't open up for another 499 days. The Southern District of California has an E&E process, it's handled before the magistrate, it's designed for early resolution of cases, and until the magistrate declares that the E&E is over, discovery is on hold. So the scheduling order didn't issue until June 24th of 2011. The motion was filed on December 30th. And to the extent that case number two, the Cabela's case, was going, had we developed an expert testimony in Cabela's, we could not have used it in case number four because the markets were different. The Cabela's case was, the consumers were hunters and fisher people and outdoor enthusiasts. This case in front of the court now is snow sports. So where did you, did you ask for an extension of time to respond to the summary judgment motion in which you said you needed more time to develop expert testimony? Yes, Your Honor, in the 56D motion and at oral arguments. Could you show us that? In volume three, Your Honor. At 1710. At line five. This is me arguing to the court. Do you have it, Your Honor? Yeah. We're right that the expert disclosures were made at the end of November according to the scheduling order, and the experts are putting together, our survey expert is putting together the survey of ski and snow sports customers. So the evidence that will appear in this proceeding is different. We could not have used an expert report from a snow ski launch. Yeah, but what I'm asking you is where did you ask for more time to come up with expert testimony and explain to the judge why you needed that? Well we did it twice, Your Honor. Not only in the 56D, but in our request to stay the case in the opposition so that the outcome of the Cabela's case that was before this court... Well, you can come up with it on the reply, but what I'm not seeing is where you said give us 30 days to come up with the expert testimony. Our experts aren't ready. They need more time. I'm not seeing that. But you can come up with it in the rebuttal. 1719, Your Honor. What line are we talking about here? At the bottom, it's starting at 719 at line 25. I say, Your Honor, the expert dates were just set. The expert was employed and doing a survey of this magnitude takes quite some time. There are areas that are remote, places like Vail, like Whistler. Oh yeah, so let's see. Where does it say you want more time? Right at the top on line 2, Your Honor. This takes quite some time. And line 16 as well, Your Honor. We've been moving, and if there's fault to be laid there, it should be laid on me. And the court said... Okay, that's short of asking him to give you a specific additional amount of time. So let's go on to your next point. Your Honor, this is not unlike the majority decision in Barron Services. We had pending motions to compel. A declaration had been submitted in support of the motion for summary judgment by Balboa, and the district court credited it completely. We had no opportunity to depose the declaration, and it ultimately took an order of court that issued three months later for Balboa to put that witness up. So similar to what happened in Barron Services, and also, Your Honor, what was said in Barron Services that the judge was the person on the ground, the discovery issues were not before Judge Huff. They were before the magistrate judge. And there's nothing in the order where she says, I understand there's motions pending in front of the magistrate. She denied the 56D motion in a footnote. And it only identified that the case had started in 2009. Just because a case started in 2009 isn't a compelling reason when the scheduling order issued in June of 2011 to allow Sirius to have finished its discovery and finished its expert work. Moving back, Your Honor, to the functionality issue, the district court on the remaining three disgolf factors. The advertising counts utilitarian advantage. The district court at A24, lines 17 to 19, cites the declaration of an attorney from the Cabela's case. She overlooked the testimony of Sirius's president at A103637 and the exhibits attached to it. That evidence was uncontroverted by Balboa. The judge overlooked it and didn't include it. Whether alternative designs are available. The judge found that we were required to prove that alternative designs were non-functional. That's not what disgolf says. It says that you have to prove they are available. And we provided evidence of other non-infringing alternative designs at A1087 through 1096. And finally, whether the particular design comes from a comparatively simple or inexpensive method of manufacture. Again, it was disposed of in only one sentence. Overlooked Mr. Edwards' testimony regarding cost, quality, and manufacture at A1037. And again, this was undisputed testimony. Balboa filed nothing to the contrary. As the court said in Berman, it was in the best interest of the district court to stay this litigation pending the outcome of the Cabela's appeal. Ultimately, the party settled and Cabela's was vacated.  But the court at the time could have stayed and under Berman should have stayed the case to see what would happen at this court with the Cabela's case. Ultimately, it was vacated. So, it's no longer available as issue preclusion in this case. So, CIRA should be given the opportunity to go back and put its evidence on without the Cabela's order infiltrating this record. Okay, you're getting into your rebuttal time. I will reserve then. We'll give you two minutes for rebuttal. Thank you. Mr. Gillespie. Good morning, Your Honor. I'm Steele Gillespie. I have the pleasure of representing Balboa Manufacturing and Sports Accessories. This case, as framed by my learned friend, is basically opportunity. That's the point of 56. The challenge for me in this case is there were discovery disputes between the parties. The Struving Declaration was put forward at the time of the summary judgment as to the specific issues primarily of the 690, not selling both things together as per the claims construction. And as my friend brought up, what appears to be short shrift by the court in denying the 56-D. I agree with my friend that Barron and Metropolitan are the key issues here. Because, again, we're going to opportunity. I would cite the court to A5692, which is the notice of related cases. My friend brought cases seriatim. What's the point, Jermaine? Pardon? What's the point? The point is we're getting to the point that we have case after case after case on the same... What's my friend have to do with it? He had the ability to do discovery in each of those cases, was doing discovery in each of those cases. I disagree with my friend saying, wait a minute, there's a different area of concern. Again, speaking to the stay as cavelous. If there was no rational being between the two cases, why would a stay be appropriate? This makes an interesting segue into something in this case that troubles me a bit, and that is this whole question of judicial notice. I guess I'm a little old-fashioned. I had thought judicial notice primarily goes to things like whether it was raining on Tuesday when the election was held or something like that. But the court seemed to be taking judicial notice of her own decisions in these other cases. I think... Can you clarify exactly what was going on with all of that? Judge Huff had done this case literally four times. We had four different cases and Cabela's had been hard fought, as the record will show. I regret that I had to put before the court over 2,000 documents from those cases, but the only purpose was for illumination. And it goes to your point... That is correct. And these things had been part of discovery. The court was pointing out things such as admissions by the party opponents, by Kerry and by Edwards. Certainly, the court can take advantage of that because it's an admission. Established facts. I understand it may have been pushed a little bit on the judicial notice, but again, the court had lived with this case for well over two years. Here's something the court said. Defendant requests that this court take judicial notice of the court's own files, records, and orders from the Cabela's case, from the case Cabela's. After reviewing defendant's request, the court takes judicial notice that Searus already litigated these identical products, litigated these products. I thought they were litigating their patent. Maybe I'm confused. And the court determined that Searus's products are functional like distinct in this, meaning Searus's claims based on alleged trade dress protection fail. Well, those were products. Additionally, the court already granted summary judgment in favor of a defendant in Cabela's on the issue of the non-infringement of Searus's 690 patent and invalidity of the claims of the 804 patent. Why would the non-infringement of a different company's product relate to this case? Yes, Your Honor. As the court is well aware, the trade dress that they were discussing was the strike 690 was the issue of goggle and bottle cloth. Bottle cloth, as the court is well aware, goes back to 1858. But it's a combination, and the court held it repeatedly. And I would say, to avoid an uncertainty, that with the claims construction and the file wrapper estoppel, you had to have the products sold together. And that goes to a point of discovery and a point I underscored in my brief, which I know you're aware of. My friend knew about this from at least 1999 when the TTAB ruled. I'm having trouble seeing how dependency of other cases should bear on the availability of discovery against your client in this case. Your Honor, I understand. And what I would say is, if a party takes as a trial tactic to file cases— You've got a better argument. They just didn't ask for it. They didn't. And I was going to get to that, but my main take on this is that— You can always say thank you. I can say thank you. I will say thank you to his Honor. Thank you. Okay, so move on to the next point. And with respect to the findings with the 690 and with the 804, I believe the court was quite clear. I believe the court, as this court has recognized, they had the 240. They had the 272. These patents made 804 obvious. And with the 690, as we've just discussed, it would be an absurdity to do it as my friend would have you do it. And that was the claims construction in every case. For those reasons, I see that the court below, Judge Huff, made an appropriate ruling for the second or fourth time, depending on which way you want to look at it. Okay. Anything else? No, Your Honor. I believe the judge should be affirmed. Okay. Thank you, Mr. Gavosky. Mr. Murphy, you've got two minutes. Thanks for the two minutes, Your Honor. With respect to the Judge Dyke's statement that we never asked for documents from Cabello, or excuse me. No, I said they've got a better argument that you didn't ask for. Well, at A2315 and A2316 is our motion in accordance with the magistrate's chamber's rules. Which volume is this in? It's in volume three, Your Honor. Okay. And what page? 2315 and 2316. Okay. And this is in the form the magistrate judge required. We requested further responses to interrogatories and document requests. The pages that follow through 2331 identify with specificity the documents that were sought to be compelled. All right. Your Honor, with respect to the 690 patent, at the court's ruling on A21 line seven and eight, the court imported the term packaging. Packaging was never construed. It was never requested to be construed by any party. Packaging appears nowhere in the patent and nowhere in the intrinsic record. Finally, Your Honor, on the trade draft. Doesn't that simply claim construction on her part? But there was no citation, Your Honor, as to how in combination means packaging. She never identified anywhere. And we did request supplemental briefing if that's how she was going to do it. The diamond-shaped mouth pattern, it could have been in a figure eight. It could have been in a circle. The beak, nose, it could have had a square shape, but we had a triangular shape. Okay. I think, Mr. Murphy, we're about out of time. Thank you, Your Honor. Okay. Thank you very much. Thank both counsel.